UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMI DEBOLD, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 20-cv-11802-ADB |
| LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, *et al.*, | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Jami DeBold brings this action against Defendants Liberty Life Assurance Company of Boston ("Liberty Life"), Liberty Mutual Insurance Company ("Liberty Mutual"), the Wachovia Corporation Long Term Disability Plan (the "Wachovia Plan"), Lincoln Financial Group ("Lincoln"), and Wells Fargo & Company ("Wells Fargo," and together with Liberty Life, Liberty Mutual, the Wachovia Plan, and Lincoln, "Defendants"), alleging a violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] [ECF No. 10 ("SAC")].[2] Currently before the Court are Defendants' motion to dismiss, [ECF No. 14], Defendants' motion to strike, [ECF No. 25], and Ms. DeBold's motion for leave to file another amended

---

[1] Liberty Life is the current claims administrator for the Wachovia Plan. See [SAC ¶ 13]. Liberty Life and Liberty Mutual were both part of the Liberty Mutual Group until Liberty Life was sold to Lincoln in 2018. [Id. ¶¶ 4–5]. Seemingly, Liberty Mutual's only connection to this suit is that it used to be Liberty Life's sister corporation, and Lincoln's only connection to this suit is that it is Liberty Life's parent corporation.

[2] Although the operative complaint is titled "Second Amended Complaint," it is, in fact, Ms. DeBold's first amended complaint. Nevertheless, for ease of reference, the Court will refer to it as the Second Amended Complaint ("SAC").

1

complaint, [ECF No. 30-1]. For the reasons set forth below, Defendants' motions are GRANTED, and Ms. DeBold's motion is DENIED.

I. BACKGROUND

A. Factual Background

For purposes of this Order, the facts are drawn from the SAC and interpreted in the light most favorable to Ms. DeBold. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). As it must, the Court "accept[s] the truth of all well-pleaded facts and draw[s] all reasonable inferences therefrom." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012). Additionally, the Court may consider "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to [Ms. DeBold's] claim; [and/or ] documents sufficiently referred to in the [SAC]." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Ms. DeBold is a participant in the Wachovia Plan. The plan was originally established by First Union Corporation ("First Union") and called the First Union Long Term Disability Plan (the "First Union Plan"). [SAC ¶ 14]. In September 2001, First Union merged with Wachovia Corporation ("Wachovia"), and the post-merger entity used the name Wachovia. See [ECF No. 16-3 at 50]. On January 1, 2002, in light of the merger, the First Union Plan was renamed the Wachovia Plan. See [id.]. Pursuant to the Wachovia Plan, the "Plan Administrator"

> shall have the exclusive right and the sole discretionary authority to interpret the terms and provisions of the Plan and to resolve all questions arising thereunder, including, without limitation, the authority to determine eligibility for Benefits and the right to resolve and remedy ambiguities, inconsistencies or omissions in the Plan, and, subject to [the "Denial of Claim" procedures outlined in] Section 4.7, such action shall be conclusive.

[Id. at 29]. "Plan Administrator" is defined as "the person or committee appointed by the Employer to administer the Plan, or in the absence of such appointment, the Employer." [Id. at

17]. "Employer," in turn, means "First Union Company . . . and any successor thereto that adopts the Plan." [Id. at 16]. Because First Union merged with Wachovia, which was eventually acquired by Wells Fargo, see [SAC ¶¶ 16, 18–19], Wells Fargo is the current Plan Administrator, and therefore has exclusive discretionary authority with respect to the Wachovia Plan. The Wachovia Plan permits Wells Fargo to appoint a third-party "Claims Administrator" to provide "third party administrative services under the Plan." [ECF No. 16-3 at 14]. Liberty Life is the appointed "Claims Administrator." [SAC ¶ 20].

The Wachovia Plan establishes a three-step internal claim review process. First, the Claims Administrator reviews the claim and makes an initial determination. [ECF No. 16-3 at 29 ("The Claims Administrator shall review claims for benefits, including claims resulting after the termination of the Participant's benefits, and respond thereto within a reasonable time after receiving the claim.")]. Next, assuming the claim is denied, the claimant may request a "full and fair review of the claim by the Claims Administrator." [Id.]. Finally, assuming the Claims Administrator upholds the denial upon review, the claimant may request that the Plan Administrator, or its designee, review the claim denial. [Id. at 30]. Only after exhausting these internal appeals may a claimant initiate a civil action. [Id.].

On or about December 30, 2001, an accident rendered Ms. DeBold a quadriplegic. [SAC ¶ 15]. At some point following her injury, Ms. DeBold submitted a claim for long term disability benefits.[3] See [SAC ¶ 16; ECF No. 16-1 at 2]. On July 9, 2002, her claim was

---

[3] It is unclear when exactly Ms. DeBold made her claim. Although she alleges that "First Union's long term disability plan paid [her] $4,782.24 in monthly benefits until First Union's merger with Wachovia in 2001," the merger, which occurred in September 2001, *pre-dated* her December 2001 injury. Further, according to the letter approving her long term disability claim, which explicitly references the Wachovia Plan (as opposed to the First Union Plan), she did not begin receiving benefits until June 2002. [ECF No. 16-1 at 3 (noting an effective date of June 29, 2002)].

3

approved, see [ECF No. 16-1 at 2], and she began receiving monthly long term disability payments.[4]  In or about October 2018, her monthly payment decreased by $797.04.  [SAC ¶ 24].  The decrease in benefits resulted from her decision to "roll over" a lump sum of roughly $106,000 from her Wells Fargo Cash Balance Fund pension account to her individual retirement account ("IRA").[5]  [Id. ¶¶ 25–26; ECF No. 16-2 at 2–3 (October 18, 2018 letter from Liberty Life to Ms. DeBold informing her of the reduction in benefits); ECF No. 16-3 at 86–91].  Liberty Life took the position that the "rollover" transaction constituted income from another source (in this case, benefits from a retirement account), which required a decrease in Ms. DeBold's disability benefits under the terms of the plan.[6]  [See ECF No. 16-2 at 2–3].

In November 2018, Ms. DeBold, believing this change to be improper under the plan's provisions, appealed the reduction, arguing that a direct rollover into her IRA should not have resulted in any change to her benefits because she did not directly receive any money as a result of the transfer.  [SAC ¶¶ 27–28].  Liberty Life denied her appeal in December 2018.  [Id. ¶ 29;

---

[4] In the SAC, Ms. DeBold alleges that she initially received $4,782.24 per month.  [SAC ¶ 16].  The claim approval letter, however, lists her gross monthly benefits as $3,957.47.  [ECF No. 16-1 at 3].

[5] Ms. DeBold alleges that Liberty Mutual, as opposed to Liberty Life, initiated the reduction.  [SAC ¶ 25].  The letter concerning the decrease in benefits, [ECF No. 16-2], is written on Lincoln letterhead but the body of the letter states that Liberty Life is responsible for managing benefits.

[6] The parties tend to use different terminology to describe the rollover, so it is difficult to determine precisely what happened.  Based on the "Benefit Election Form" filed in connection with the instant motions, [ECF No. 16-3 at 86–91], it appears as though Ms. DeBold elected to receive a lump sum "one-time payment of $106,006.61" from the Wells Fargo & Company Cash Balance Plan, in lieu of monthly retirement benefits, and opted to send the money straight to her IRA.  See [id. at 87, 90].  In making the election, Ms. DeBold acknowledged that the "lump sum represent[ed] the total value of [her] benefit from the Plan" and waived her rights to any future benefits.  [Id. at 91].  Thus, in essence, she decided to forgo monthly retirement benefits in favor of receiving a one-time payment that was deposited directly into her IRA.

ECF No. 16-3 at 63–65]. After obtaining counsel, Ms. DeBold filed a second appeal, averring that the First Union Plan did not allow for the reduction in her disability benefits and that the Wachovia Plan's terms did not control her entitlement to benefits. [SAC ¶ 30; ECF No. 16-3 at 2–7]. Further, she reiterated her stance that because she had not taken any distribution and instead deposited the roughly $106,000 directly into her IRA, she did not have any "income," and her long term disability benefits should not have been reduced. [SAC ¶ 30; ECF No. 16-3 at 2–7]. On June 24, 2019, the Wachovia Long Term Disability Appeal Committee, acting on behalf of Wells Fargo, denied her appeal and informed Ms. DeBold that she had exhausted her administrative remedies and a civil action was therefore her only remaining recourse. [SAC ¶ 31; ECF No. 16-4 at 2–7]. Rather than initiate a civil suit, Ms. DeBold's counsel sent another letter to Wells Fargo, making additional legal arguments, on April 23, 2020. [SAC ¶ 32]. Wells Fargo "refused to review the contents of" the letter and stood by its denial of Ms. DeBold's appeal. [Id. ¶ 33].

### B. Procedural Background

Ms. DeBold filed her initial complaint in this action on October 2, 2020. [ECF No. 1]. On December 22, 2020, before Defendants answered or otherwise responded, she filed the SAC, which seeks plan benefits (Count I) and attorneys' fees and costs (Count II) pursuant to ERISA. [SAC ¶¶ 36–38]. Defendants moved to dismiss on January 5, 2021. [ECF No. 14]. On January 26, 2021, without obtaining consent from Defendants or leave from the Court, Ms. DeBold filed her Third Amended Complaint ("TAC").[7] [ECF No. 23 ("TAC")]. After Defendants moved to strike the TAC, [ECF No. 25], Ms. DeBold belatedly sought leave to amend, [ECF No. 30-1].

---

[7] Even though the TAC is, in fact, only Ms. DeBold's second amended complaint, the Court will refer to it as the TAC for ease of reference.

The motion to dismiss, the motion to strike, and the motion to amend are all currently pending before the Court. See [ECF No. 14 (motion to dismiss); ECF No. 24 (opposition to motion to dismiss); ECF No. 25 (motion to strike); ECF No. 29 (motion to dismiss reply); ECF No. 30 (opposition to motion to strike); ECF No. 30-1 (motion for leave to amend); ECF No. 32 (opposition to motion for leave to amend)].

## II. MOTION TO DISMISS

### A. Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales, 682 F.3d at 44–45 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández, 640 F.3d at 14). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the

complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

**B.     Discussion**

"A civil action may be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, Ms. DeBold seeks plan benefits. See [SAC ¶ 36]. Specifically, she argues that, because her IRA rollover should not have resulted in any decrease in her disability benefits, since October 2018, she has been receiving $797.04 per month less than she should be. See [id. ¶¶ 24–35].

1.     A Deferential Standard of Review Controls Ms. DeBold's Claim

If a plan administrator "is explicitly given discretionary authority by the terms of the [plan]," the relevant question upon judicial review is whether "its decision is arbitrary and capricious or an abuse of discretion." Arruda v. Zurich Am. Ins. Co., 951 F.3d 12, 21 (1st Cir. 2020). Under that standard, the Court "must defer where the 'decision is reasonable and supported by substantial evidence on the record as a whole.'" Id. (quoting McDonough v. Aetna Life Ins. Co., 783 F.3d 374, 379 (1st Cir. 2015)). "'Substantial evidence' is 'evidence reasonably sufficient to support a conclusion.'" Id. (quoting Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 184 (1st Cir. 1998)).

Here, the Wachovia Plan explicitly grants such discretionary authority to Wells Fargo:

> The Plan Administrator shall have the exclusive right and the sole discretionary authority to interpret the terms and provisions of the Plan and to resolve all

> questions arising thereunder, including, without limitation, the authority to determine eligibility for Benefits and the right to resolve and remedy ambiguities, inconsistencies or omissions in the Plan, and, subject to Section 4.7, such action shall be conclusive.

[ECF No. 16-3 at 29]; see Arruda, 951 F.3d at 14, 21 (noting that where the plan provided the plan administrator with "discretionary authority to determine eligibility for benefits and to construe the terms of the plan," the deferential standard applied); Ortega-Candelaria v. Johnson & Johnson, 755 F.3d 13, 16 n.2, 20 (1st Cir. 2014) (noting that deferential standard applied in light of delegation language similar to the language here). Accordingly, the "arbitrary and capricious or abuse of discretion" standard governs Ms. DeBold's claim.[8]

### 2. Ms. DeBold Has Failed to State a Plausible Claim

Given the standard of review, the relevant question for purposes of the instant motion is whether Ms. DeBold has alleged facts plausibly suggesting that the reduction in her long term disability benefits was arbitrary and capricious or an abuse of discretion. Defendants argue that because the Wachovia Plan required a reduction in benefits after the approximately $106,000

---

[8] Ms. DeBold wants Wells Fargo's decision reviewed *de novo*, see [ECF No. 24 at 10–15], but her arguments in support are muddled and difficult to follow. At one point, Ms. DeBold seems to argue that the Wachovia Plan did not give Liberty Mutual discretionary authority, [id. at 10–11], but that argument misses the mark because discretionary authority was granted to Wells Fargo as the ultimate decision-maker, see [ECF No. 16-3 at 29 (grant of discretionary authority); id. at 29–30 (describing internal appeals process culminating in final review by Wells Fargo)]. In fact, elsewhere in her brief, Ms. DeBold seems to concede that Wells Fargo had discretion, but then argues about the permissible scope of that discretion. See [ECF No. 24 at 15 ("This discretion is limited to Plan terms which are legal under ERISA.")]. Further, Ms. DeBold has not explained why, in her view, the language in the Wachovia Plan is insufficient to confer discretion on Wells Fargo. In any event, even if Wells Fargo's decision were subject to *de novo* review, as Ms. DeBold argues it should be, the Court's conclusion would not change. For the reasons discussed infra, Wells Fargo's decision concerning Ms. DeBold's claim is entirely consistent with the language of the Wachovia Plan, and Ms. DeBold has therefore failed to state a plausible claim that she was improperly denied benefits.

lump sum transfer to her IRA, Ms. DeBold's claim necessarily fails.[9] [ECF No. 15 at 16–17].

Ms. DeBold concedes that the language of the Wachovia Plan (and the summary plan description) authorizes the reduction in benefits but argues that the plan language is not enforceable because it is inconsistent with ERISA and the Tax Code (and violates federal common law). See [ECF No. 24 at 1 ("The Defendants have requested dismissal based on their reliance on plan language which is contradicted by the ERISA and IRS code in addition to extensive case law."); id. at 3 ("The Defendants' reliance on this factual position is ineffective

---

[9] Under the Wachovia Plan, "the amount of Disability Benefit shall be the lessor of: (1) 60% of the Participant's Pre-Disability Earnings; or (2) 66 2/3 % of the Participant's Pre-Disability Earnings *less the Benefits from Other Income*." [ECF No. 16-3 at 21 (emphasis added)]. "Benefits from Other Income" includes "[t]he amount of any Disability Benefits, or Retirement Benefits the Participant voluntarily elects to receive as retirement payment under the Employer's Retirement Plan." [Id. at 13]. "Retirement Plan"

> means a plan which provides Retirement Benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include: a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, 401(k) plan, stock ownership plan, or nonqualified plan of deferred compensation. [And t]he term "Employer's Retirement Plan" is deemed to include any Retirement Plan (a) which is part of any Federal, State, Municipal or Association retirement system; or (b) for which the Employee is eligible as a result of employment with the Participating Employer.

[Id. at 18]. "Retirement Benefit"

> when used with the term Retirement Plan, means money which: (a) is payable under a Retirement Plan *either in a lump sum* or in the form of periodic payments; (b) does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and (c) is payable upon: (1) early or normal retirement; or (2) Disability, if the payment reduces the amount of money which would have been paid under the plan at the normal retirement age.

[Id. at 17–18 (emphasis added)]. Further, the summary plan description for the Wachovia Plan explicitly provides that a participant's disability benefits will be reduced if a lump sum payment from a Wells Fargo & Company Cash Balance Plan is rolled over into an IRA. See [id. at 70].

9

since its Plan defines 'income' incorrectly under both statutory and case law . . . Therefore, their act of offsetting the Plaintiff's benefits was illegal *per se*."). More specifically, Ms. DeBold seemingly relies on her view that a direct rollover from one retirement account to another does not qualify as "income" under the Tax Code, [id. at 8], and that ERISA does not govern IRAs, [id. at 9–10].[10]

Even if Ms. DeBold is correct that her rollover was a non-taxable event and that ERISA does not control IRAs,[11] she has failed to articulate why those facts would render Wells Fargo's decision to uphold the reduction in her benefits arbitrary and capricious or an abuse of discretion.

First, with respect to her argument regarding the Tax Code, whether her rollover had tax consequences is distinct from whether it had consequences to her long term disability benefits under the terms of the Wachovia Plan. Federal income tax and ERISA are two separate areas of law, and ERISA plans are not reviewed or interpreted based on the tax laws. An ERISA plan is essentially a contract, see US Airways, Inc. v. McCutchen, 569 U.S. 88, 100–02 (2013), and

---

[10] Ms. DeBold likewise attacks Wells Fargo's decision by labeling it "contrary to federal common law" and "illegal." [ECF No. 24 at 15]; see also [id. at 8 ("These are the only facts which ever needed to be established as the federal common law which flows thereafter is wholly dispositive. This basic law was inexplicably ignored by the Defendants.")]. None of the cases she cites in support of her argument, which are mostly from out-of-circuit, are directly on point. See [id. at 15–16 (citing cases)]. As examples, some concern whether plans that typically provide benefits in annuity form with a cost of living adjustment are required to include such an adjustment in lump sum distributions, Laurenzano v. Blue Cross & Blue Shield of Mass., Inc. Ret. Income Trust, 134 F. Supp. 2d 189 (D. Mass. 2001); Williams v. Rohm & Haas Pension Plan, No. 04-cv-00078, 2005 WL 8165734 (S.D. Ind. Dec. 22, 2005), one deals with mandatory arbitration clauses in ERISA-governed plans, Franke v. Poly-Am. Med. & Dental Benefits Plan, No. 07-cv-03990, 2008 WL 11434524 (D. Minn. Mar. 6, 2008), and another addresses whether a plan was governed by ERISA at all, Pagan v. Pfizer Pharm., LLC, No. 15-cv-01121, 2016 WL 1122858 (D.P.R. Mar. 22, 2016). Ms. DeBold has identified no case where a court found that a reduction in benefits expressly authorized by the plan was invalid because the transaction triggering the reduction did not have income tax implications.

[11] Because doing so is not necessary to resolve the instant motions, the Court takes no position on whether Ms. DeBold's contentions are correct.

ERISA plans are therefore typically reviewed in accord with contract principles. Ms. DeBold has identified no principle of contract law or interpretation that suggests that the relevant portions of the Wachovia Plan—which she concedes authorized Wells Fargo to reduce her long term disability benefits following the rollover—are invalid or unenforceable because they resulted in a change in benefits even where there were no tax consequences.

Second, her argument concerning ERISA's applicability to IRAs is beside the point. No one here is seeking to apply ERISA's requirements to Ms. DeBold's IRA. Further, just because ERISA does not control Ms. DeBold's IRA does not mean that actions that Ms. DeBold takes in connection with her IRA—such as depositing a lump sum retirement payment into it—cannot trigger reductions in her long term disability benefits under the Wachovia Plan.[12]

Thus, because Ms. DeBold admits that Wells Fargo's decision was consistent with the terms of the Wachovia Plan and the Court finds her legal arguments concerning the invalidity of the relevant portions of the Wachovia Plan to be meritless, Ms. DeBold has failed to state a plausible claim.[13] Defendants' motion to dismiss, [ECF No. 14], is therefore <u>GRANTED</u>.[14]

---

[12] Ms. DeBold's arguments to the contrary are convoluted and confusing. See [ECF No. 24 at 10 ("As would logically follow, ERISA does not protect a rollover distribution once it is paid from an ERISA-qualified plan to an IRA."); id. ("Based on the applicable, clear federal law which governs the Plaintiff's rollover transaction, ERISA law does not pre-empt the IRS code and rulings. Based on the cited statutes and precedents, the Defendants cannot enforce their Offset of Benefits Provision and dismissal of Plaintiff's case is improper."); id. at 9 ("408(a) of the Internal Revenue Code encompasses rollover IRAs and, despite the expansive ERISA preemption clause, ERISA does not preempt rules and regulations which enforce federal law.")].

[13] With respect to Ms. DeBold's request for attorneys' fees, [SAC ¶¶ 37–38], the Court is vested with discretion to award attorneys' fees to either party in ERISA benefits cases, see 29 U.S.C. § 1132(g). Here, where Ms. DeBold has failed to state a claim, the Court will not award fees.

[14] Defendants also argue that Liberty Life, Liberty Mutual, and Lincoln are inappropriate defendants, [ECF No. 15 at 10–13], and that Ms. DeBold's claims are time-barred, [id. at 14–16]. Because the Court finds that Ms. DeBold has failed to state a plausible claim against any defendant, it does not reach those arguments.

## III. MOTIONS TO STRIKE AND FOR LEAVE TO AMEND

### A. Motion to Strike

Defendants move to strike the TAC because Ms. DeBold filed it without Defendants' consent or leave of Court in violation of Federal Rule of Civil Procedure 15. [ECF No. 25]. Ms. DeBold concedes that she violated Rule 15, but asks that her noncompliance be excused. [ECF No. 30].

Ms. DeBold has already filed an amended complaint. [SAC]. To amend again, she needed to obtain Defendants' "written consent or the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). As noted above, she did not do so. Accordingly, the TAC should not have been filed, and Defendants' motion to strike it, [ECF No. 25], is <u>GRANTED</u>.

### B. Motion for Leave to Amend

Recognizing that she jumped the gun by filing the TAC without the Court's leave, Ms. DeBold has belatedly moved for leave to amend. [ECF No. 30-1]. Although she should have sought such leave before filing the TAC, the Court will consider her motion on the merits.

> A motion for leave to amend is considered under Fed. R. Civ. P. 15(a), which provides that leave to amend should be freely given when justice so requires. The limited reasons for denying a pre-judgment motion to amend include undue delay, bad faith, futility and the absence of due diligence on the movant's part.

<u>Libby v. Park, Marion and Vernon Sts. Operating Co.</u>, 278 F. Supp. 3d 501, 504 (D. Mass. 2017) (citations and internal quotation marks omitted). Here, the only proposed amendment is the addition of a claim for breach of fiduciary duty, which is premised on the same factual allegations underlying her other claim. See [ECF No. 30-1 at 1 (noting that the TAC "does not add additional parties but only an additional cause of action for Breach of Fiduciary Duty arising out of the very same nucleus of operative facts")]; see also [TAC ¶¶ 39–40 (asserting breach of

fiduciary claim)]. Because Ms. DeBold's proposed amended complaint would still fail to state a viable claim, filing it would be futile, and her motion, [ECF No. 30-1], is therefore DENIED.

First, Ms. DeBold's breach of fiduciary duty claim is merely a repackaged benefits claim. She describes the alleged breach as follows: "During its overpayment recovery from [Ms. DeBold], the Defendant has breached its fiduciary duty to [her] by the commission of an illegal act in which it has acted in contradiction to superseding federal common law in its collection activity." [TAC ¶ 40]. Thus, in essence, she asserts that by wrongfully denying her benefits to which she is entitled, Defendants breached their fiduciary duties. Because 29 U.S.C. § 1132(a)(1)(B) provides Ms. DeBold an adequate remedy for recovering benefits, she is precluded from bringing a fiduciary duty claim. See Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997) ("Beneficiaries may sue a plan for breach of fiduciary duty causing individual harm, but such suits are allowed only for equitable relief and, even then, only where Congress has failed to provide more specific relief. Neither condition is met here since [the plaintiff] seeks damages, not equitable relief, and his grievance—a denial of benefits—is specifically addressed by 29 U.S.C. § 1132(a)(1)(B)." (citation omitted)); Shaffer v. Foster-Miller, Inc., 650 F. Supp. 2d 124, 127 (D. Mass. 2009) ("First, as to [p]laintiff's breach of fiduciary duty (section 1132(a)(3)) cause of action, the First Circuit has consistently held that the availability of adequate relief under section 1132(a)(1)(B) to recover benefits due under the terms of a plan bars a separate claim for breach of fiduciary duty under section 1132(a)(3) as a matter of law.").

Second, for the reasons discussed above, the Court finds that Ms. DeBold has failed to make any factual allegations plausibly suggesting that Defendants did anything wrong by reducing her disability benefits. See supra Section II.B.2.

## IV. CONCLUSION

Accordingly, Defendants' motions to dismiss the SAC, [ECF No. 14], and to strike the TAC, [ECF No. 25], are GRANTED, and Ms. DeBold's motion for leave to amend, [ECF No. 30-1], is DENIED.

**SO ORDERED**

June 28, 2021                                          /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE